# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

SANDRA TURNEY,

    Plaintiff,

vs.                                              No. CIV 99-0466 JC/LCS (ACE)

VALUERx PHARMACY PROGRAM, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant ValueRx Pharmacy Program, Inc.'s (Defendant) Motion for Summary Judgment, filed February 15, 2000 *(Doc. 17)*. Defendant moves the Court to dismiss Plaintiff's complaint in its entirety for failure as a matter of law to make a Family and Medical Leave Act (FMLA) claim.

A. Background

Plaintiff began working for Defendant in 1990 as a staff pharmacist. In 1997, Plaintiff accumulated 44 mostly intermittent unexcused full day absences[1] and 25 tardies. As a result of these absences and tardies, Plaintiff received three written warnings, several verbal warnings, and a three-day suspension. In December of 1997, Defendant terminated Plaintiff for excessive absenteeism. Complaint for Employment Discrimination at ¶ 5, filed April 26, 1999 *(Doc. 1)*.

Plaintiff alleges that she took several leaves of absence for medical reasons and to care for her mother. *Id*. at ¶ 6. Plaintiff further alleges that these absences involved a serious health condition that made Plaintiff unable to perform the functions of a staff pharmacist. *Id*. Additionally, Plaintiff states that she gave notice to Defendant to take these leaves of absences as soon as practicable after

---

[1] Plaintiff was absent a total of 49 days in 1997 but five of those days were for pre-approved vacation time.

she learned of her need to take such leaves. *Id*. at 7. Plaintiff contends that these absences were covered by the FMLA and so Defendant should not have terminated her for excessive absences. *Id*. at ¶ 1.

B. Standard for Summary Judgment

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Thrasher v. B & B Chemical Co., Inc.*, 2 F.3d 995, 996 (10th Cir. 1993). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id*. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

C. Discussion

Defendant argues that summary judgment is appropriate in this matter for several reasons.[2] First, Defendant argues that Plaintiff does not have an FMLA claim because she has not identified a

---

[2] Defendant requests that the Court not consider a United States Department of Labor letter of investigation submitted by Plaintiff. Because the letter is conclusory in nature and lacks any reasoning to support its determination of FMLA violations, I will give the letter little weight.

"single qualifying reason" for her absences. Second, Defendant argues that Plaintiff's FMLA claim fails because all or most of her absences were not for a "serious health condition" under the FMLA. Third, Defendant argues that Plaintiff did not satisfy the FMLA notice requirements. Finally, Defendant argues that even if Plaintiff had an FMLA claim for some of her absences, she was nonetheless subject to termination for excessive tardiness and absenteeism for the non-FMLA absences.

1) A Single Qualifying Reason for the Absences

The FMLA entitles an eligible employee to take a total of twelve work weeks of leave during any twelve-month period for serious health conditions that make the employee unable to perform her job functions. *See* 29 U.S.C. § 2612(a)(1)(D). Section 2615(a)(1) prohibits employers from interfering with, restraining, or denying the exercise of or attempt to exercise FMLA rights. The FMLA also provides that if an employee takes FMLA leave, she is entitled on return from such leave to be restored to her former position of employment or to an equivalent position. *See* 29 U.S.C. § 2614(a)(1). An employee can take FMLA leave on an intermittent basis if that leave is "due to a single qualifying reason." 29 C.F.R. § 825.203(a). The burden is on the employee to show that she is entitled to FMLA leave. *See, e.g., Austin v. Haaker*, 76 F. Supp.2d 1213, 1221 (D. Kan. 1999).

Defendant in this case argues that the reasons for Plaintiff's absences were not due to a "single qualifying reason." Defendant contends that Plaintiff's reasons for her absences were either unknown or for a variety of unconnected medical reasons such as the flu, unspecified illness, menstrual bleeding, sinus infection, migraine headaches, right knee pain, "food addiction," depression, and reflux. Plaintiff also suffered from back pain beginning in the summer of 1997. Plaintiff does not address this "single qualifying reason" argument in her response. Instead, Plaintiff states that she need only establish a question of material fact on the serious health condition and notice issues. Since

Plaintiff's discussion of the serious health condition issue implicitly subsumes the "single qualifying reason" prerequisite to intermittent FMLA leave, I will turn my attention to that issue next.

2) Serious Health Conditions

"Leave may be taken intermittently or on a reduced leave schedule when medically necessary for planned and/or unanticipated medical treatment of a related serious health condition by or under the supervision of a health care provider, or for recovery from treatment or recovery from a serious health condition." 29 C.F.R. § 825.203(c). A serious health condition may involve the continuing treatment by a health care provider for a "period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days and any subsequent treatment or period of incapacity relating to the same condition" which involves either two or more treatments under orders of, or on referral by, a health care provider, or at least one treatment which results in a regimen of continuing treatment under the supervision of the health care provider. 29 C.F.R. § 825.114(a)(2)(i)(A) and (B). A serious health condition involving continuing treatment by a health care provider also occurs when there is a "period of incapacity or treatment for such incapacity due to a chronic serious health condition." 29 C.F.R. § 825.114(a)(2)(iii). A chronic serious health condition requires periodic visits for treatment, continues over an extended period of time (including recurring episodes), and may cause episodic periods of incapacity. 29 C.F.R. § 825.114(a)(2)(iii)(A), (B), and (C).

Plaintiff contends that she had two specific medical conditions that qualified as serious health conditions: back pain and arthritis in her right knee. Plaintiff suggests that 18 days of absence were due to being incapacitated from back pain and an additional 14 days of absences were attributed to incapacity from right knee pain. With respect to the back pain, Plaintiff's physician, Dr. Lovette, first

diagnosed Plaintiff with back strain and sciatica on June, 11 1997. Exhibit 7 (attached to Plaintiff's Response to Defendants' Motion for Summary Judgment on Claims Added by First Amended Complaint (Response), filed March 6, 2000 *(Doc. 19)*). Dr. Lovette advised Plaintiff to take anti-inflammatory medication and apply heat. On that same day, Dr. Lovette wrote a note for Plaintiff that stated that she had been ill for two days and could return to work on June 13, 1997. Exhibit 4 (attached to Response). On August 18, 1997, Dr. Lovette again diagnosed Plaintiff with back strain and pain aggravated by morbid obesity. Exhibit 7 (attached to Response). Dr. Lovette noted that Plaintiff was given a note to take some time off from work and prescribed pain medication. *Id*. That note stated that Plaintiff could not work until August 29, 1997. Exhibit 4 (attached to Response). On August 21, 1997, Dr. Lovette wrote another note stating that Plaintiff continued to be incapacitated by back pain and should be excused from work until August 25, 1997. *Id*. On August 28, 1997, Dr. Lovette wrote yet another note asking that Plaintiff be excused from work on August 27 and 28 and allowed to work only every other day. *Id*. On September 3, 1997, Dr. Lovette wrote a note stating that Plaintiff is trying to recover from a back injury and should work only every other day. *Id*. Dr. Lovette also asked to have Plaintiff excused for August 29, September 2, 3, 4, and 5, and that she return to work on September 8, 1997.[3] *Id*. Dr. Lovette wrote two more notes excusing Plaintiff from work on September 22 and October 3 for back pain. *Id*. On November 17, 1997, Plaintiff saw Dr. Lovette for improving back pain and menstrual cramps. Exhibit 7 (attached to Response). On that day, Dr. Lovette wrote another note stating that Plaintiff had been ill and could not return to work until November 19. Exhibit 4 (attached to Response).

---

[3] Defendant implies that the September 4 and 5 dates that Dr. Lovette asks Defendant to excuse Plaintiff were forged as was the return date of September 8. This implication is, however, not supported by the evidence. Dr. Lovette shortly thereafter stated that Plaintiff could not work on September 5 or 8 due to back pain. Exhibit 4 (attached to Response). Moreover, Dr. Lovette stated in her deposition that her nursing assistant may have added those dates. Depo. of Dr. Lovette at 31-31, Exhibit 10 (attached to Response).

Plaintiff also saw Dr. Wellborn for her back pain beginning on October 21, 1997. Exhibit 8 (attached to Response). He recommended physical therapy and working three days a week. *Id*. Dr. Wellborn indicated in his deposition that Plaintiff was unable to work five days a week at that time. Depo. of Dr. Wellborn at 20, Exhibit 17 (attached to Response). On November 25, 1997, Dr. Wellborn noted that after two physical therapy sessions Plaintiff indicated that her pelvis felt better. *Id*. The physical therapist recommended an aquatic program. *Id*.

Considering all of the above medical evidence related to Plaintiff's back, I find that Defendant has failed to demonstrate that Plaintiff was not under continuing treatment for her back pain and was not incapacitated by back pain from work for at least four consecutive days. In fact, Plaintiff's supervisor did not doubt that Plaintiff was incapacitated when she called in sick. Depo. of Kent Bailey at 78-79, 82, 106, Exhibit 9 (attached to Response). This is sufficient evidence to create a question of material fact as to whether Plaintiff suffered from a serious medical condition based on her back pain.

The medical evidence regarding the seriousness of Plaintiff's complaint of right knee pain is not as extensive. Dr. Tabet diagnosed Plaintiff with degenerative arthritis in her right knee on February 24, 1997. Exhibit 7 (attached to Response). Dr. Tabet suggested the use of anti-inflammatory medication and weight loss. *Id*. Plaintiff subsequently complained of right knee pain to Dr. Lovette on March 17, 1997, as well as heavy menstrual bleeding. That day, Dr. Lovette wrote a note indicating that Plaintiff may intermittently require absence from work for the next 10 weeks. Exhibit 4 (attached to Response). Plaintiff in fact missed 14 days in that 10-week period. Exhibit A-4 to Otero Declaration (attached to Memorandum Brief in Support of Defendant ValueRx Pharmacy Program, Inc.'s Motion for Summary Judgment, filed Feb. 15, 2000 *(Doc. 18)*). The only four consecutive days Plaintiff was absent during that time period was April 15, 16, 17, and 18.

Those absences were, however, not due to knee pain but due to the flu.  Depo. of Sandra Turney at 237 (attached to Memo).

Moreover, Plaintiff only received a diagnosis and evaluation of her knee from Dr. Tabet. Dr. Lovette did not perform a physical examination of the Plaintiff's knee.  Consequently, Plaintiff received only one treatment for her right knee pain and so a rational juror could not find that Plaintiff had continuing treatment for that knee.[4]  Furthermore, I find that these two medical visits could not reasonably be considered periodic visits for treatment which continued over an extended period of time.  Accordingly, a rational juror could not find that the knee pain was a chronic condition as defined by the FMLA.  I, therefore, conclude that Plaintiff failed to present sufficient evidence to create a question of material fact as to whether Plaintiff's right knee pain was a serious medical condition.

Finally, Plaintiff contends that even if her medical conditions when considered separately do not constitute a serious medical condition, when considered together those conditions constitute a serious medical condition.  As a matter of law, multiple diagnoses can when taken together give rise to a serious health condition.  *Price v. City of Fort Wayne*, 117 F.3d 1022, 1025 (7th Cir. 1997). Dr. Lovette stated in her deposition testimony that Plaintiff's back pain, obesity, knee pain and depression impacted her ability to work.  Exhibit 5 at 40-41 (attached to Response).  I find that this evidence creates a question of material fact as to whether Plaintiff's multiple diagnoses of back pain, obesity, knee pain and depression when taken together created a serious health condition.

In addition to Plaintiff's alleged serious medical condition, Plaintiff also alleges that she missed work to care for her ailing mother who likewise suffered from a serious health condition.  Plaintiff

---

[4] Two doctor's visits are considered continuing treatment if the purpose of those visits is for diagnosis and evaluation.  *See Stubl v. T. A. Systems, Inc.*, 984 F. Supp. 1075, 1088 (E.D. Mich. 1997).

states in her Declaration that in 1997 she was the only family member available to care for her mother and as a result she missed at least seven days of work to care for her or to take her to the hospital and/or doctor's office. Exhibit 6 at § 7 (attached to Response). In fact, Plaintiff stated in an Employee Counseling Notice, dated July 15, 1997, that she would avail herself of any assistance she can find in dealing with her 87 year old mother. Exhibit A-1 Otero (attached to Memo). Dr. Lovette, also Plaintiff's mother's physician, stated in a February 1998 letter that Plaintiff's mother is "elderly and becoming more fragile" and has a failing memory. Exhibit 4 (attached to Response). The letter goes on to further state that Plaintiff

> has been forced to bring her mother to the office on numerous occasions over the past 18 months for urgent problems and near catastrophes, one of which required emergency hospitalizations. Without the daughter's participation, critical history and follow up would have been impossible on numerous occasions. On the one occasion of the hospitalization, death or grave harm could have resulted without [Plaintiff's] attention.

*Id.* It appears that Plaintiff's mother was receiving continuing treatment from Dr. Lovette. Moreover, fragility and memory loss could be considered chronic conditions as defined by the FMLA since Plaintiff's mother apparently had several medical visits including follow up visits for at least 18 months. For these reasons, I find that there is a question of material fact with respect to whether Plaintiff's mother had a serious medical condition.

    3)  Adequate Notice to Defendant

29 C.F.R. § 825.303(a) states that when the need for FMLA leave is not foreseeable "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." However, "the employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303(b). To determine if sufficient notice has been provided to the employer, the Court must decide "whether the information imparted to the employer is sufficient to

reasonably apprise it of the employee's request to take time off for a serious health condition." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995). In other words, notice is adequate if there is "sufficient information to put the [employee] on notice that this was a possible FMLA leave situation." *Price*, 177 F.3d at 1025-26 (citing *Manuel*, 66 F.3d at 760, 764). Once such notice has been provided, the employer is obligated to count the "absence as FMLA leave under the 'serious health condition' provision or to follow procedures set out in the statute and the regulations designed to prevent employee abuse of the Act." *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000).

In this case, Defendant received notes from Dr. Lovette beginning in January 1997 to excuse Plaintiff from work for unspecified illnesses as well as back pain. Plaintiff also completed a leave slip indicating a doctor's appointment for her knee in February 1997. Defendant complains that the notes from Dr. Lovette do not constitute adequate notice of FMLA leave because of their vagueness. In *Thorson*, the plaintiff, similar to this one, gave her employer doctor's notes to excuse her from work. *Id*. Those notes like some of the notes in this case had no explanation for the requested excuse from work. *Id*. at 382. The court in *Thorson* nonetheless accepted those notes as adequate notice. *Id*. at 381. *See also Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 981-83 (5th Cir.), *cert. denied*, 525 U.S. 826 (1998) (notes or messages produced by an employee, not by a physician, are insufficient notice); *Price*, 117 F.3d at 1025-26 (leave form requesting time off for medical need and doctor's note requiring time off is sufficient notice). Moreover, Plaintiff verbally told her supervisor in 1997 about migraines, menstrual problems, knee problems, back pain and problems with her mother. Depo. of Perry Dean Storey at 27-28, Exhibit 2 (attached to Response). Defendant, however, contends that Plaintiff should have been filling out FMLA leave request forms but did not. 29 C.F.R. § 825.303(b) states that where there is a need for unforeseeable FMLA leave "[t]he employee should

provide notice to the employer either in person or by telephone, telegraph, facsimile ('fax') machine or other electronic means." Plaintiff, therefore, was not required to fill out FMLA leave request forms.

Defendant also argues that Dr. Lovette's note asking that Plaintiff be allowed to be absent intermittently for a ten-week period is insufficient notice. Defendant relies on *Bailey v. Amsted Industries, Inc.*, 172 F.3d 1041, 1046 (8th Cir. 1999) which states

> An attempt to satisfy the notice requirements by an indication that [the plaintiff] might have to be absent at some unforeseen time in the future satisfies neither the requirement of notice of 'the anticipated timing and duration of the leave,' 29 C.F.R. § 825.302(c), nor the requirement of notice 'as soon as practicable if dates ... were initially unknown,' 29 C.F.R. § 825.302(a).

Following *Bailey*, I cannot find as a matter of law that Dr. Lovette's note regarding intermittent absences for a ten-week period satisfies the FMLA notice requirement.

Since Plaintiff provided Defendant sufficient notice of a possible FMLA leave situation for many of her absences, it was then up to Defendant to inquire further to determine whether that leave came under the FMLA. 29 C.F.R. §§ 825.208(a); 825.303(b). Defendant did not do so. Under these circumstances, I find that except for the ten-week period discussed above there is a question of material fact with respect to whether the information given to Defendant reasonably apprised it of Plaintiff's request to take time off for a possibly serious health condition. *See Satterfield*, 135 F.3d at 977.

The discussion to this point can be summarized as follows: Plaintiff has produced enough evidence to create a question of material fact as to whether she suffers from a serious medical condition comprised of back pain and possibly a combination of back pain, obesity, knee pain, and depression. Except for Dr. Lovette's note regarding intermittent absences for a ten-week period, Dr. Lovette's notes excusing Plaintiff from work and Plaintiff's verbal communication of her medical

problems, including her mother's care, also create a question of material fact as to whether Plaintiff gave sufficient notice to Defendant of a possible FMLA leave situation. Accordingly, the issue of whether Plaintiff was entitled to FMLA leave for her back pain or combination of medical conditions is one for the jury to decide. The next issue is this: Even if Plaintiff can show that she was entitled to FMLA leave for her back pain and combination of medical conditions, could Defendant have justifiably terminated her for other excessive absences not based on medical reasons or not related to her serious health conditions, i.e., her back pain and combination of medical conditions.

4) Other Reasons for Termination

The court in *Bailey*, 172 F.3d at 1041, found that a discharge may nonetheless be justifiable even if FMLA leave would have been granted if there were other unexcused absences for non-medical reasons or medical reasons not related to the serious health condition. Here, Defendant does not dispute that Dr. Lovette approved 36 days of absences out of a total of 44 days. However, 14 of those 36 days were taken pursuant to Dr. Lovette's note concerning intermittent absences during a ten-week period. Since that particular note did not constitute adequate notice, those 14 days would not be considered FMLA leave. That leaves 22 days of possible FMLA absences taken pursuant to Dr. Lovette's notes. Plaintiff could arguably add seven additional possible FMLA leave days for taking care of her mother. If the jury finds that those 29 days are FMLA leave days, the other 15 absences may not be excessive when one considers that Plaintiff took only five days of the 25 days of sick/personal/vacation days she earns a year.[5]

Plaintiff, however, was documented as being tardy on 25 occasions. Those tardies have not been linked to any health condition and were due mostly to oversleeping and traffic jams. Plaintiff

---

[5] Plaintiff also argues without legal support that Defendant's so-called "no fault" attendance policy is illegal in light of the FMLA. 29 C.F.R. § 825.220(c) states that FMLA leave cannot be counted under "no fault" attendance policies. Because I have taken into account 29 C.F.R. § 825.220(c) in considering this motion for summary judgment, I see no need to address Plaintiff's concern about the validity of the "no fault" attendance policy.

argues that the tardies cannot be lumped together with excessive absenteeism as the basis for Plaintiff's termination. Plaintiff is correct. Plaintiff's termination letter addresses her days of absences, not the tardies. Exhibit 4 (attached to Response). A plain reading of that letter would lead a rational juror to conclude that Plaintiff was terminated for her absent days, not the tardies. In sum, I find that summary judgment is not appropriate based on *Bailey's* holding that termination can be justified on non-FMLA excessive absenteeism.

D. Conclusion

Summary judgment is appropriate only as to any FMLA claim involving leave taken for Plaintiff's right knee alone and the 14 days of absences taken within the ten-week period beginning on March 17, 1993. Otherwise, a jury will consider whether Plaintiff's leave for her back; combination of back pain, obesity, knee pain and depression; and care for her mother constituted acceptable FMLA leave. The jury will also decide if any non-FMLA leave would be considered excessive.

IT IS, THEREFORE, ORDERED that Defendant's Motion for Summary Judgment, filed February 15, 2000 *(Doc. 17)*, is **granted in part** in that Plaintiff's FMLA claim regarding her right knee alone and the 14 days of absences beginning on March 17, 1997 are dismissed with prejudice.

DATED this 5th day of May, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Shane C. Youtz |
| | Youngdahl & Sadin, P.C. |
| | Albuquerque, New Mexico |
| | |
| Counsel for Defendant: | Charles J. Vigil |
| | Jeffrey L. Lowry |
| | Rodey, Dickason, Sloan, |
| |  Akin & Robb, P.A. |
| | Albuquerque, New Mexico |